**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JANE DOE, a minor, by and through JOHN DOE and JANET DOE, her parents, natural guardians, and next friends,** ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **CIVIL ACTION NO. 5:25-cv-161 (MTT)** |
| **LAMAR COUNTY SCHOOL DISTRICT,** *et al.*, ) ) ) ) | |
| **Defendants.** ) ) | |

<u>**ORDER**</u>

A student sexually assaulted and harassed the plaintiffs' daughter, Jane Doe, when she was an eleven-year-old student attending Lamar County Middle School ("LCMS"). ECF 21 ¶¶ 20–58. The plaintiffs bring suit against Lamar County School District ("LCSD"); Stephen Boyd, the LCMS principal; and Timothy Jones and Juan Diaz, LCMS Physical Education teachers, alleging the defendants violated Doe's federal statutory and constitutional rights and were negligent under Georgia law. *See id.* ¶¶ 59–87, 88–121, 122–132. The defendants move to dismiss, claiming the plaintiffs have failed to adequately plead most of their claims. ECF 30 at 4–11. The defendants also argue the defenses of official immunity under Georgia law and qualified immunity bar the plaintiffs' claims against the individual capacity defendants. ECF 30 at 2–4, 11–14. For the reasons explained below, the defendants' motion (ECF 30) is **GRANTED in part** and **DENIED in part**.

# I.  BACKGROUND

## A.  Factual Background

The Court takes the following facts from the well-pleaded allegations in the amended complaint, construing all reasonable inferences in the light most favorable to the plaintiffs. *See FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011). James Smith, a thirteen-year-old student at LCMS, sexually harassed and assaulted Jane Doe, rendering Doe unable to continue her education at LCMS. ECF 21 ¶¶ 23–25, 42, 51. Doe was particularly vulnerable to harassment because she had multiple conditions causing her to operate at a cognitive and emotional level much below her age. *Id.* ¶ 22. Doe's conditions included "Learning Disability, Oppositional Defiant Disorder, Attention Deficit Hyperactive Disorder, and Generalized Anxiety Disorder," and she required special education services. *Id.* ¶¶ 21, 22.

Smith had a proclivity for sexual harassment. *Id.* ¶¶ 24, 25, 37–42. Smith had sent pictures of his genitals to other students in the school. *Id.* ¶ 39. And in January 2023, he sent inappropriate messages to Doe via the "Roblox App" saying, "I want to touch your butt" and "You are going to need to bring an extra pair of underwear to school." *Id.* ¶¶ 24, 25. In addition, sometime before Smith sexually assaulted Doe, he attempted to lure Doe away from the field where the students had P.E. by kicking Doe's ball into adjacent woods. *Id.* ¶¶ 37, 38.

Doe's mother discovered Smith's messages to Doe on January 24, 2023, and immediately emailed the school principal, defendant Boyd, to report Smith's behavior. *Id.* ¶¶ 10, 26. Mrs. Doe told Boyd of Smith's messages to Doe. *Id.* ¶ 26. She also told him about Doe's disabilities and vulnerabilities. *Id.* ¶ 27. Mrs. Doe expressed fear that

Smith would sexually assault Doe, and she asked Boyd to place the students on different class schedules and to keep the students separated. *Id.*

Boyd responded, "I will speak to my ESE lead and see where we can put either one of them so they are not in the same co-teach classes all day. I think I can have it done tomorrow and I will ensure they have new schedules." *Id.* ¶ 28. Boyd also said, "we will take care of it" and "we will find a way. Promise." *Id.* ¶ 29. But despite Boyd's promises, he either never created a separation plan or never implemented it. *Id.* ¶ 31.

On April 26, 2023, Smith sexually assaulted Doe during P.E. class. *Id.* ¶¶ 34–42. As he had done before, Smith kicked Doe's soccer ball into the woods adjacent to the soccer field where they had class. *Id.* ¶ 37. Smith followed Doe as she went to retrieve the ball, and he sexually assaulted her. *Id.* ¶¶ 41, 42. A teacher at LCMS learned of the assault and reported it to the school counselor. *Id.* ¶ 47. The next day, the counselor questioned Doe about the assault without parental notification or consent. *Id.* ¶ 48. Indeed, LCMS did not inform Doe's parents of the assault until thirty-two hours after it occurred. *Id.* ¶ 49.

## B. Procedural Background

The plaintiffs filed their original complaint in April 2025, and the defendants moved to dismiss. ECF 1, 14. The plaintiffs responded to the defendants' motion and moved to amend the complaint. ECF 17, 18. The Court granted the motion to amend and ordered additional briefing on the issue of qualified immunity. ECF 19. The plaintiffs complied. ECF 22. The amended complaint has three counts: (1) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* against defendant LCSD and defendants Boyd, Jones, and Diaz in their official capacities; (2) violation of 42

U.S.C. § 1983 against defendant LCSD and Defendants Boyd, Jones, and Diaz in their

individual and official capacities; (3) negligence and negligence per se against

defendants Boyd, Jones, and Diaz in their individual capacities.[1] ECF 21 ¶¶ 59–87, 88–

121, 122–132.

The defendants filed a renewed motion to dismiss, and the Court dismissed the

defendants' first motion to dismiss as moot. ECF 30, 31; *Hoefling v. City of Miami*, 811

F.3d 1271, 1277 (11th Cir. 2016) (holding that the filing of an amended pleading renders

the previous pleading a "legal nullity"). Accordingly, the Court will not address

arguments solely raised in the defendants' first motion.

## II.  STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient

factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when "the court [can] draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are

merely consistent with a defendant's liability fall short of being facially plausible."

*Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and

the reasonable inferences therefrom are construed in the light most favorable to the

plaintiff." *FindWhat Inv'r Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*,

466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

---

[1] The plaintiffs also assert causes of action for "punitive damages" and "attorney's fees" as Count IV and
Count V. ECF 21 at 20. Damages, attorney's fees, and costs are remedies.

dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).
The complaint must "give the defendant fair notice of what the . . . claim is and the
grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive
issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v.
Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION[2]

#### A.  Section 1983

The plaintiffs bring claims under 42 U.S.C. § 1983 against defendant LCSD and
defendants Boyd, Jones, and Diaz alleging violations of Doe's constitutional rights
under the Equal Protection Clause and Due Process Clause of the Fourteenth
Amendment. ECF 21 ¶¶ 88–121. Defendants Boyd, Jones, and Diaz first argue they are
entitled to qualified immunity. ECF 30 at 2–4. But the defendants have not adequately
raised a qualified immunity defense. The doctrine of qualified immunity "offers complete
protection for government officials sued in their individual capacities if their conduct
'does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th
Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified
immunity provides government officials with a formidable shield, their entitlement to
raise that shield is not automatic." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940

---

[2] "[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are
functionally equivalent.*" Higdon v. Fulton Cnty., Georgia*, 746 F. App'x 796, 799 (11th Cir. 2018).
Consequently, "there is no need to bring official capacity actions against local government officials" and
"keeping the claims against both the municipality and the officers would be redundant." *Id.* (citing *Busby v.
City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)); *see also Harris by & through Davis v. Autry*, 2022
WL 392169, at *6 (11th Cir. Feb. 9, 2022) (explaining a plaintiff's § 1983 claims against a school
employee sued in his official capacity "were redundant" where the school district was also a party to the
lawsuit). Thus, the Court **DISMISSES** the plaintiffs' Title IX and § 1983 claims against defendants Boyd,
Jones, and Diaz in their official capacities as redundant.

(11th Cir. 2018). Rather "the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Id*. Here, the defendants fail to address discretionary authority at all in their motion to dismiss. ECF 30 at 2–4.[3] Consequently, they have not satisfied their burden to raise the defense of qualified immunity.

Defendants also argue the amended complaint fails to state a claim under § 1983. ECF 30 at 4–11. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) the deprivation of a right secured by the Constitution or federal law; and (2) the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court first addresses the plaintiffs' claim under the Equal Protection Clause before turning to their substantive due process claim.

### 1. Equal Protection

"The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007). "A governmental official may be held liable under § 1983 upon a showing of deliberate indifference to known sexual harassment." *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (citation modified).[4] To show deliberate indifference, "a

---

[3] The plaintiffs argued in their supplemental qualified immunity brief, filed before the defendants' renewed motion to dismiss, that the defendants' failed to adequately raise discretionary authority, so the defendants' failure to address discretionary authority at all in their operative brief is particularly puzzling. *See* ECF 22 at 13–14.

[4] The defendants state the standard for establishing an Equal Protection Clause violation for student-on-student sexual harassment is not deliberate indifference but discriminatory intent, citing *Adams v. Demopolis City Schs.*, 80 F.4th 1259, 1273 (11th Cir. 2023). ECF 30 at 4 n.1. To be clear, *Adams* does not purport to disturb the well-settled principle "that deliberate indifference to sexual harassment is an equal protection violation." *Hill*, 797 F.3d at 979. The defendants do not argue the Eleventh Circuit's decision in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) alters the deliberate indifference standard for student-on-student sexual harassment. *Wade* held a plaintiff asserting an Eighth Amendment deliberate indifference claim under the Cruel and Unusual Punishments Clause must demonstrate that the defendant acted "with subjective recklessness as used in the criminal law," requiring a showing that

plaintiff must prove the individual defendant 'actually knew of and acquiesced in' the discriminatory conduct." *Id.* (quoting *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999)); *see also A.P. v. Fayette Cnty. Sch. Dist.*, 2023 WL 4174070, at *10 (11th Cir. June 26, 2023). But school districts, which are akin to municipalities in the context of § 1983 litigation, may be liable for student-on-student sex-based harassment only where "a municipal custom, policy, or practice caused the harassment."[5] *Hill*, 797 F.3d at 977; *see also Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009). "The plaintiff 'must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Hill*, 797 F.3d at 977 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

### a. Physical Education Teachers Jones and Diaz

Defendants Jones and Diaz argue the amended complaint does not adequately allege they acted with deliberate indifference to known sexual harassment. ECF 30 at 2–7. The Court agrees the amended complaint does not adequately plead Jones and Diaz "actually knew" of Smith's harassment, much less that they "acquiesced in" Smith's conduct. *See A.P.,* 2023 WL 4174070 at *10. While the amended complaint, on many occasions, asserts the conclusory allegation that Jones and Diaz knew of Smith's harassing behavior, the amended complaint does not allege facts showing Jones and

---

"the defendant was actually, subjectively aware that his own conduct caused a risk of serious harm to the plaintiff." *Id.* at 1261–62 (citation modified). Even if the *Wade* standard extends to Title IX and Equal Protection claims for student-on-student sexual harassment, Boyd's alleged conduct, as will be discussed, satisfies that standard here.

[5] Municipalities and other local government entities, like school districts, are considered "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Davis v. Dekalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000).

Diaz had actual knowledge of any of Smith's prior infractions. ECF 21 ¶¶ 33, 40, 52, 68, 71, 72, 75, 99–104, 118. And the Court discounts conclusory allegations when evaluating a complaint on a Rule 12(b)(6) motion to dismiss. *See Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188.

Moreover, the Court also notes that although the amended complaint at times nakedly asserts that Jones and Diaz had actual knowledge, at other times the amended complaint suggests Jones and Diaz lacked actual knowledge. For example, the amended complaint alleges Jones and Diaz "should have known" of Smith's harassing conduct. ECF 21 ¶ 71. And it alleges, "Defendants failed to properly communicate the purported separation requirements to staff members, to include Defendants Jones and Diaz." *Id.* ¶¶ 101, 116. Because the amended complaint fails to allege Jones and Diaz acted with deliberate indifference to known sexual harassment, it fails to state an Equal Protection claim against them. Accordingly, the plaintiffs' Equal Protection claim against defendants Jones and Diaz is **DISMISSED without prejudice**.

### b.  Principal Boyd

Unlike defendants Jones and Diaz, the amended complaint alleges with specificity that defendant Boyd had actual knowledge that Smith sexually harassed Doe on at least one occasion. ECF 21 ¶¶ 26–28. Mrs. Doe sent an email to Boyd informing him of Smith's harassing messages to Doe. *Id.* ¶ 27. Mrs. Doe also told Boyd about Doe's disabilities and vulnerabilities in her email. *Id.* She expressed concern that Smith would sexually assault Doe, and she asked Boyd to place the students on different class schedules and asked the school to keep the students separated. *Id.* These factual

allegations are sufficient to plausibly allege Boyd had actual knowledge of Smith's harassing conduct.

The amended complaint also sufficiently alleges Boyd responded to this known sexual harassment with deliberate indifference, in other words, that Boyd "acquiesced in" Smith's discriminatory conduct. *Hill*, 797 F.3d at 978. The amended complaint adequately pleads that in response to Mrs. Doe's email, Boyd did virtually nothing to remedy the situation. ECF 21 ¶ 31. Although Boyd said he would implement a separation plan, the amended complaint alleges he either never created or never implemented the plan. *Id.* In any case, the amended complaint alleges Boyd, contrary to his assurances, failed to take action to remedy the situation.[6] By alleging that Boyd did nothing in response to known sexual harassment, the amended complaint adequately alleges deliberate indifference. *See Hill,* 797 F.3d at 979 ("Viewing the evidence favorably to Doe, doing nothing was a deliberately indifferent response that subjected Doe to further sexual harassment"). And although the defendants failed to adequately raise the defense of qualified immunity, the Court also notes that an official in Boyd's position "would not have believed doing nothing was lawful in light of the clearly established principle that deliberate indifference to sexual harassment is an equal protection violation." *Id*. at 979 (reversing the grant of qualified immunity to a school principal who did "virtually nothing" in response to the rape of a middle school student by another student).

---

[6] The defendants argue Boyd took some action because he responded to Mrs. Doe's email and said he would put the students on different schedules. ECF 30 at 5. They also argue the plaintiffs admit a "new schedule was likely created but [that] it was not effectively implemented." *Id*. To the contrary, the amended complaint alleges a new schedule was either not created or not implemented at all. ECF 21 ¶ 31. And the Court must accept "all well-pleaded facts" as true on a motion to dismiss. *FindWhat Inv'r Grp.*, 658 F.3d at 1296. In any event, if Boyd recognized the risk to Doe and thus created the new schedule but then didn't bother to put it in place, that, if anything, is even more egregious.

Accordingly, the defendants' motion to dismiss the plaintiffs' Equal Protection Claim against defendant Boyd is **DENIED**.[7]

### c.  LCSD

To allege § 1983 liability against LCSD, the plaintiffs must allege a constitutional tort resulted "from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Hill*, 797 F.3d at 977 (quoting *Denno v. Sch. Bd. of Volusia Cty., Fla.,* 218 F.3d 1267, 1276 (11th Cir. 2000)). In other words, the plaintiffs must allege "a municipal custom, policy, or practice caused" the student-on-student harassment amounting to an Equal Protection Clause violation. *Id.* The plaintiffs do not allege LCSD had an official, written policy of ignoring sexual harassment. *See* ECF 21. Instead, plaintiffs assert LCSD caused Doe to suffer an Equal Protection violation by 1) maintaining a policy/custom of ignoring complaints of sexual harassment, 2) maintaining a policy/custom of failing to train employees "in implementing preventative and supportive measures regarding incidents of sexual harassment," and 3) through Boyd approving or implementing, as final policymaker, the unconstitutional action at issue. *Id.* ¶¶ 97, 109–117.

---

[7] The amended complaint's Title IX claim alleges, "Defendant Boyd was both an active participant of the violation of Plaintiff's rights as well as a supervisor of others who violated Plaintiff's rights, with Defendant Boyd's inactions to proper[l]y institute a plan and supervise the implementation of the plan directly causing Plaintiff's harm." ECF 21 ¶ 69. The defendants argue the amended complaint does not adequately plead a § 1983 claim for supervisory liability against Boyd, confusing the standard for final policymaker liability against a municipality and supervisory liability against a supervisory official. ECF 30 at 7–9; *see Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (explaining the standard for supervisory liability under § 1983). The plaintiffs respond by arguing they adequately plead final policymaker liability, also relying upon the supervisory liability standard. ECF 32 at 12–13. It is not at all clear that the plaintiffs are attempting to bring a § 1983 supervisory liability claim against Boyd "for the unconstitutional acts of [his] subordinates," Jones and Diaz. *Doe*, 604 F.3d at 1266. In any event, such a claim would fail because, as discussed, the amended complaint does not sufficiently allege Jones and Diaz violated Doe's constitutional rights.

*Custom/Policy of Ignoring Complaints*

To adequately allege LCSD had a custom/policy of ignoring complaints of sexual harassment, the plaintiffs must allege facts showing LCSD's custom or practice is so well settled that it assumes the force of law. *Denno*, 218 F.3d at 1277. More specifically, the plaintiffs must allege LCSD had a "persistent and widespread practice" of ignoring complaints of sexual harassment. *Id*. The amended complaint fails to allege facts sufficient to make this showing because it only identifies one instance where LCSD was aware of a complaint of sexual harassment and failed to take remedial action, that is, when defendant Boyd failed to create or implement a separation plan after receiving the email reporting Smith's behavior. ECF 21 ¶¶ 26–28. But this single instance is not sufficient to constitute a "persistent and widespread practice" demonstrating a well-settled policy assuming the force of law. Thus, the amended complaint fails to allege LCSD had a custom/policy of ignoring complaints of sexual harassment.

*Failure to Train*

The amended complaint next alleges LCSD is liable because it failed to train its employees on "implementing preventative and supportive measures regarding incidents of sexual harassment." ECF 21 ¶ 111. The amended complaint also alleges LCSD failed to train "its administrators, staff, students and parents despite the plainly obvious need for training on, among other things, student-against-student sexual misconduct and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment." *Id.* ¶ 109. A municipality may be liable for failure to provide adequate training if the deficiency evidences deliberate indifference. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). "'[A] plaintiff must present some

evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" *Id.* (quoting *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 409). But the Supreme Court has left open the possibility that in "a narrow range of circumstances," "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 63–64 (discussing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). The plaintiffs mainly argue the amended complaint sufficiently alleges a pattern of constitutional violations. ECF 32 at 14–16. But the amended complaint also appears to suggest the second type of notice, claiming the need for training was "obvious."[8] *Id.* ¶ 109.

First, the amended complaint fails to allege a pattern of similar constitutional violations by untrained employees which would have put LCSD on notice of the need to train. While the amended complaint alleges that *Smith* engaged in multiple acts of harassment, it does not allege facts showing LCSD knew of more than one instance of that harassment, much less that *untrained employees* repeatedly engaged in constitutional violations in response. Consequently, the amended complaint does not

---

[8] The plaintiffs argued the need for training was obvious in their response to the defendants' first motion to dismiss. *See* ECF 17 at 8–9. The plaintiffs do not reiterate this argument in their response to the defendants' renewed motion to dismiss. *See* ECF 32.

plausibly allege LCSD knew of a pattern of constitutional violations, and it does not state a municipal liability claim for failure to train.

Second, the plaintiffs do not meaningfully argue in their operative brief that the alleged lack of training would obviously result in a constitutional violation. *See* ECF 32. The Supreme Court has called these scenarios "rare," and to this Court's knowledge, the Eleventh Circuit has not extended this theory of liability to circumstances akin to this one. *Connick*, 563 U.S. at 64; *see also Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F. Supp. 3d 1241, 1265 (S.D. Fla. 2019) (dismissing a single incident liability claim for failure to train on properly handling sexual harassment reports). The Court recognizes that several district courts have allowed such theories of liability to proceed beyond the motion to dismiss stage. *See Doe v. Gwinnett Cnty. Pub. Sch.*, 2019 WL 12336248, at *11 (N.D. Ga. Aug. 22, 2019); *Doe v. Wayne Cnty. Sch. Dist.*, 2025 WL 1287990, at *14–15 (S.D. Ga. May 2, 2025). Again however, the plaintiffs have not argued in their operative brief that this case falls into the "rare," "narrow range of circumstances," not requiring an alleged pattern of similar constitutional violations to allege municipal liability for failure to train, and the Court sees no reason to go it alone. *See Connick*, 563 U.S. at 62. Even if the Court were inclined to enter this almost uncharted territory, the facts alleged here do not reveal training deficiencies that obviously could cause constitutional violations.

*Final Policymaker Liability*

"A municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decisionmaking authority in a particular area." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004). But "final policymaking

authority over a particular subject matter does not vest in an official whose decisions are subject to meaningful administrative review." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1264 (11th Cir. 2010) (citation modified). The amended complaint alleges LCSD is liable because defendant Boyd was the final policymaker for, among other things, deciding how to respond to Mrs. Doe's email notifying him of Smith's behavior. ECF 21 ¶ 116. The amended complaint also alleges Boyd's policies were not subject to review by the school superintendent or school board. *Id.* At this early stage of the case, the amended complaint adequately pleads final policymaker liability.[9]

Accordingly, the plaintiffs' Equal Protection claim against LCSD shall proceed solely on the theory that Boyd was a final policymaker and responded to known sexual harassment with deliberate indifference. Defendants' motion to dismiss this claim is **DENIED**.

### 2. Substantive Due Process

In the noncustodial, public school setting, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Adams v. Demopolis City Sch.*, 80 F.4th 1259, 1274 (11th Cir. 2023). The defendants move to dismiss the plaintiffs' substantive due process claim. They argue, in a footnote, that because the amended complaint fails to allege facts showing the defendants acted with deliberate indifference, it does not allege facts showing the defendants' actions were

---

[9] The Court again notes the defendants conflate the standard for supervisory liability with final policymaker liability in their operative brief. ECF 30 at 7–9. Moreover, the defendants' reply-brief argument that Boyd is subject to administrative review (ECF 33 at 5–6) is in direct tension with the amended complaint's factual allegation to the contrary (ECF 21 ¶ 116), which the Court, of course, accepts as true on a motion to dismiss.

"arbitrary or conscience-shocking," and taken with intent to injure, as required to establish a substantive due process violation. ECF 30 at 4 n.1. The defendants do not offer any additional argument for dismissal. *See* ECF 30.

As explained above, the amended complaint adequately pleads deliberate indifference on the part of defendants Boyd and LCSD. Thus, the premise of the defendants' sole argument on this issue—that the amended complaint fails to allege deliberate indifference—does not support dismissal. And in the absence of meaningful argument that the amended complaint fails to adequately allege arbitrary or conscience-shocking behavior apart from the deliberate indifference inquiry, the Court declines to dismiss the plaintiffs' substantive due process claim against defendants Boyd and LCSD at this time. But, as discussed above, the amended complaint fails to allege deliberate indifference against individual defendants Jones and Diaz. Thus, it fails to allege their behavior was arbitrary or conscience shocking.

Accordingly, the defendants' motion to dismiss the plaintiffs' substantive due process claim is **DENIED** as to defendants Boyd[10] and LCSD but **GRANTED** as to defendants Jones and Diaz. The plaintiffs' substantive due process claim against defendants Jones and Diaz is **DISMISSED without prejudice**.

## B.  Title IX

The defendants move to dismiss the plaintiffs' Title IX claim against LCSD for failure to state a claim.[11] ECF 30 at 4–6. Title IX provides, "[n]o person . . . shall, on the

---

[10] Again, Boyd failed to address discretionary authority and thus has not adequately raised qualified immunity.

[11] The defendants refer in passing to an argument raised in their initial motion to dismiss that the plaintiffs may not pursue claims under Title IX and § 1983 for alleged constitutional violations for the same conduct. ECF 30 at 4. But the defendants do not appear to reassert this argument, and the only case they cite in their operative brief, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009), says

basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Title IX creates a private right of action against federal funding recipients for "student-on-student sexual harassment." *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 639, 646–47 (1999). But to prevail on a Title IX claim for student-on-student sexual harassment, a plaintiff must prove four elements, one of which is that "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Williams*, 477 F.3d at 1293 (quoting *Davis*, 526 U.S. at 633). LCSD moves to dismiss solely on the ground that the amended complaint does not sufficiently allege LCSD was deliberately indifferent to sexual harassment or discrimination. ECF 30 at 4–6.

　　　To allege LCSD was deliberately indifferent, the plaintiffs must allege the school's "response, or lack thereof, to student-on-student harassment or discrimination [was] 'clearly unreasonable' in the light of known circumstances." *Adams*, 80 F.4th at 1270 (quoting *Davis*, 526 U.S. at 648). "[A] school district or official 'must know of and disregard an excessive—that is, an extremely great—risk to the victim's health or safety.'" *Id.* (quoting *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020)). A failure to take any remedial action in response to a known excessive risk to a student's safety is clearly unreasonable. *See Davis*, 526 U.S. at 654 ("The complaint also suggests that petitioner may be able to show both actual knowledge and deliberate indifference on the part of the Board, which made no effort whatsoever either to

---

"[b]ecause the protections guaranteed by the two sources of law diverge in this way, we cannot agree . . . that 'Congress saw Title IX as the sole means of vindicating the constitutional right to be free from gender discrimination perpetrated by educational institutions.'" *See also Hill*, 797 F.3d at 976–77 (elaborating on the relationship between Title IX and § 1983 liability).

investigate or to put an end to the harassment."); *see e.g., Hill*, 797 F.3d at 979 ("Viewing the evidence favorably to Doe, doing nothing was a deliberately indifferent response that subjected Doe to further sexual harassment by depriving her of the opportunity to continue attending [the school]"). Conversely a school that takes measures to stop harassment, even if such measures ultimately prove ineffective, is not deliberately indifferent.[12] *See e.g., Adams*, 80 F.4th at 1270.

Construing all reasonable inferences in the plaintiffs' favor, the amended complaint adequately alleges LCSD responded to known student-on-student sexual harassment with deliberate indifference. Again, the amended complaint alleges defendant Boyd knew Smith was sexually harassing Doe and knew of Doe's vulnerabilities and the risk of Smith sexually assaulting Doe. ECF 21 ¶¶ 26, 27. Yet, Boyd effectively did nothing in response, which is clearly unreasonable. *See Hill,* 797 F.3d at 979.

Accordingly, the Court **DENIES** the defendants' motion to dismiss Doe's Title IX claim against LCSD.

## C.  State Claims

The defendants move to dismiss the plaintiffs' Georgia law claims for negligence and negligence per se against defendants Boyd, Jones, and Diaz, arguing the defendants are entitled to official immunity under Georgia law.[13] ECF 30 at 11–14.

---

[12] The Court notes again that creating a plan to address known harassment, and then not bothering to implement it, is worse than taking no action.

[13] Although Count III of the amended complaint is titled, "Negligence/Negligence *per se*," the amended complaint does not allege a negligence per se claim because the plaintiffs do not identify a statutory duty breached by the individual defendants. *See* ECF 21 at 18–20 ¶¶ 122–32.

### 1. Defendants Jones and Diaz

The Court has dismissed all the plaintiffs' federal claims against defendants Jones and Diaz. Federal courts have limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A district court may appropriately discontinue its exercise of supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "The district court . . . must weigh . . . at every stage of the litigation, whether to dismiss the supplemental claims." *Ameritox, Ltd. v. Millennium Labors, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citation modified). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "Indeed, if the federal claims are dismissed prior to trial, [the Supreme Court] strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The Court declines to exercise supplemental jurisdiction over the state claims against Jones and Diaz.

Accordingly, plaintiffs' state law claims against Jones and Diaz are **DISMISSED without prejudice**.

### 2. Defendant Boyd

Official immunity limits the circumstances under which public employees may be liable for negligence relating to their official duties. *See Barnett v. Caldwell*, 302 Ga. 845, 847, 809 S.E.2d 813 (2018). Officials may be subject to suit "'if they act with actual

malice or with intent to cause injury in the performance of their official functions.'" *Id.* (quoting Ga. Const. Art. I, § 2, ¶ 9(d)); *see also Croland v. City of Atlanta*, 782 F. App'x 753, 759 (11th Cir. 2019) ("Actual malice requires more than harboring bad feelings or ill will about another; rather, ill will must also be combined with the intent to do something wrongful or illegal" (citation modified)); *Williams v. DeKalb Cnty.*, 308 Ga. 265, 278, 840 S.E.2d 423 (2020) ("A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs" (citation modified)). Officials may also be subject to suit "for negligent performance or nonperformance of their 'ministerial functions.'" *Barnett,* 302 Ga. at 847, 809 S.E.2d 813 (quoting Ga. Const. Art. I, § 2, ¶ 9(d)). "Put more plainly, teachers may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." *Id.* at 847–48, 809 S.E.2d 813.

A ministerial function is one that is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Wilson v. Anderson*, 374 Ga. App. 668, 670, 913 S.E.2d 813 (2025). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's directive, or a statute." *Id.* (citation modified). In contrast, a "discretionary duty requires the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way *not specifically directed*." *Id.* (quoting *Cotton v. Smith*, 310 Ga. App. 428, 434, 714 S.E.2d 55 (2011)). "'[T]he determination of whether the action at issue is discretionary or ministerial is made on a case-by-case basis, and the dispositive issue is the character

of the specific actions complained of, not the general nature of the job.'" *Garren v. Bryant*, 922 S.E.2d 902, 907 (Ga. Ct. App. 2025) (quoting *Barnett,* 302 Ga. at 848, 809 S.E.2d 813). "Under Georgia law, when 'there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task.'" *Pierce v. Clayton Cnty., Georgia*, 794 F. App'x 879, 882 (11th Cir. 2019) (quoting *Grammens v. Dollar*, 287 Ga. 618, 620, 697 S.E.2d 775 (2010)).

The Court first observes the amended complaint does not adequately allege facts showing Boyd acted with actual malice, or "deliberate intention to do wrong." While the amended complaint adequately alleges Boyd acted with deliberate indifference by failing to create or implement a separation plan, nothing suggests he did so with an intention to do wrong or cause Doe harm. Consequently, Boyd is entitled to official immunity unless his alleged negligence relates to a ministerial, rather than discretionary, function.

The amended complaint adequately alleges Boyd had a duty to separate students from known sexual threats by keeping them on different schedules. ECF 21 ¶¶ 126, 128, 131. The directive "to separate potential sexual assault victims from their harassers by keeping them on different schedules" is sufficiently "simple, absolute, and definite" to constitute a ministerial duty. *Id.* ¶ 128; *Wilson*, 374 Ga. App. at 670, 913 S.E.2d 813. To be sure, that directive may leave some room for discernment as to the manner in which Boyd could accomplish the specified task of keeping the students separated by placing them on different schedules. But "[w]hen the policy clearly mandates a task to be done but leaves some discretion to the employee as to the

*manner* in which to accomplish that task, the execution of that specific task is characterized as ministerial even though the *manner* in which it is accomplished is left to the employee's discretion." *See Wilson*, 374 Ga. App. at 672, 913 S.E.2d 813 (quoting *Hall v. Acker*, 367 Ga. App. 411, 415-416, 885 S.E.2d 266 (2023)). Here, "the execution of [the] specific task" of separating students by placing them on different schedules, is ministerial.[14] *See id.*

Boyd argues implementing a separation plan would require student supervision which is a discretionary function. True, policies requiring student supervision are *often* discretionary, but "[t]hat is not to say that there could never be a policy on student supervision so definite as to render a school employee's act ministerial." *Barnett*, 302 Ga. at 850, 809 S.E.2d 813. Courts must look to the "character of the specific actions complained of," and here the amended complaint alleges a failure to separate Smith and Doe by keeping them on different schedules. *Garren*, 922 S.E.2d at 907. The directive to implement a separation plan by placing the students on different schedules as plead does not require the exercise of personal deliberation and judgment.

Accordingly, defendants' motion to dismiss the plaintiffs' negligence claim on official immunity grounds is **DENIED** as to defendant Boyd.

## IV. CONCLUSION

The defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

---

[14] The court in *Wilson* distinguished cases like *Murphy v. Bajjani*, 282 Ga. 197, 199, 647 S.E.2d 54 (2007), which held a statute mandating creation of a school safety plan did not create a ministerial duty because schools had discretion as to how to create the plan. 374 Ga. App. at 672, 913 S.E.2d 813. The court in *Wilson* explained, "the conduct at issue in those cases was not clearly mandated by the policy in question." *Id.* As in *Wilson*, the conduct at issue here, failure to separate Smith from Doe by placing them on different schedules, was clearly mandated by the alleged policy.

The motion to dismiss Count I (Title IX) is **DENIED** but shall proceed only against LCSD.

The motion to dismiss Count II (§ 1983) is **GRANTED** as to Jones and Diaz, and they are **DISMISSED without prejudice**. The motion is **DENIED** as to Boyd and LCSD but shall proceed against LCSD solely on the theory that Boyd was a final policymaker.

The motion to dismiss Count III (negligence) is **DENIED** as to Boyd. The Court declines to exercise supplemental jurisdiction over the state claims brought against Jones and Diaz, and these claims are **DISMISSED without prejudice**.

Because all claims against Jones and Diaz have been dismissed, the Clerk is **DIRECTED** to terminate them as parties.

**SO ORDERED**, this 15th day of January, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT